THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY,<br><br>          Plaintiff,<br>    v.<br><br>CITY OF SAMMAMISH,<br><br>          Defendant. | CASE NO. C17-0921-JCC<br><br>ORDER GRANTING KING COUNTY'S MOTION FOR PRELIMINARY INJUNCTION |

This matter comes before the Court on Plaintiff King County's motion for a preliminary injunction (Dkt. No. 7). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

**I.     BACKGROUND**

This case arises out of a dispute over the placement of four stop signs at two intersections within a regional public trail. Trail construction disputes have been before this Court and the Western District of Washington several times. *See, e.g.*, *Friends of the E. Lake Sammamish Trail v. City of Sammamish*, 361 F. Supp. 2d 1260 (W.D. Wash. 2005) (Coughenour, J.); *Hornish v. King Cty.*, 182 F. Supp. 3d 1124 (W.D. Wash. 2016) (Pechman, J.).

On October 22, 1898, the Northern Pacific Railway Company granted the property in dispute (the Corridor) to the Seattle and International Railway Company, a Burlington Northern

& Santa Fe Railway Company (BNSF) predecessor. (Dkt. No. 9-1 at 8.) BNSF then conveyed its interest in the Corridor to The Land Conservancy. *Hornish*, 182 F. Supp. 3d at 1226.[1] Ultimately, on September 18, 1998, King County acquired the Corridor along the eastern shore of Lake Sammamish. *Id.* at 1127. King County declared its intention to assume financial responsibility for the area as an interim trail sponsor, a process created by the National Trails System Act known as "railbanking." *Id.*; *see* 16 U.S.C. § 1247(d). King County was granted all of The Land Conservancy's ownership interests in the Corridor. *Hornish*, 182 F. Supp. 3d at 1226.

Since acquisition, King County has been constructing a regional trail, the East Lake Sammamish Trail (ELST). *Id.* The ELST is a King County park that will provide a multi-use recreational trail and non-motorized transportation corridor to residents throughout the region. (Dkt. No. 15 at ¶ 3.) King County is currently attempting to construct a permanent trail along South Segment A. (*Id.* at ¶ 4.) Prior to this most recent dispute with Defendant City of Sammamish, South Segment A was expected to reopen in late July or early August of 2017. (*Id.* at ¶ 16.) In short, the parties disagree over the placement of stop signs at two intersections, 206th Avenue SE and SE 33rd Street, within South Segment A. King County believes the stop signs should face the oncoming cars, while the City believes the signs should face the pedestrians and bikers on the ELST. (*See* Dkt. No. 14 at ¶ 8.)

On May 4, 2017, King County submitted Right of Way (ROW) permits to the City for its preferred intersection designs. (Dkt. No. 15-1 at 2.) King County included a disclaimer that the applications were not a waiver of its ownership and control over the Corridor and it did not "concede that any permit [was] required from the City to undertake work or modify traffic control." (*Id.* at 5.) On May 23, 2017, King County withdrew its applications for the ROW

---

[1] The parties have not provided the Court with these conveyance documents and instead cite to *Hornish* to support these facts. While the Court and the parties do not dispute the specific factual findings cited in the *Hornish* decision, the parties should have resubmitted the evidence submitted in the previous disputes.

permits. (Dkt. No. 15 at ¶ 13.) King County had determined that the City's property interest in the intersections was subject to the superior rights of the railroads, which King County had been conveyed. (*See id.*; Dkt. No. 9-1 at 15, 22.) On June 9, 2017, City Manager Lynn Howard sent a letter to King County and threatened to revoke the construction permits, which had already been granted for construction in South Segment A, if King County did not submit new ROW permits for the intersections at issue. (Dkt. No. 14-1 at 52.)

On June 14, 2017, King County filed this action to resolve the issue. (Dkt. No. 1.) On June 16, 2017, the City issued a stop work order for all remaining construction on South Segment A. (Dkt. No. 15-1 at 7.) Later that same day, the City clarified that King County was only required to stop work at the intersections in dispute. (Dkt. No. 8-1 at 62.) King County estimates the remaining construction will take at least 30 to 45 days to complete after the stop work order is lifted. (Dkt. No. 15 at ¶ 16.) Moreover, the entirety of South Segment A cannot be reopened until the construction is completed at the two intersections. (*Id.* at ¶ 4.)

King County now asks the Court to enter a preliminary injunction that would find (1) the stop work order is preempted by federal law; (2) the City has no authority to regulate the ELST's intersections; (3) the City is demanding intersections designs with unsafe placement; and (4) the City's preferred intersection design violates Washington law. (*See* Dkt. No. 7-1.)

## II. DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 65(a), a party seeking a preliminary injunction must show (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a preliminary injunction in is in the public interest. *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also L.A. Unified Sch. Dist. v. U.S. Dist. Ct.*, 650 F.2d 1004, 1008 (9th Cir. 1981). Issuance of a preliminary injunction is "an

extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 55 U.S. at 24).

### B. Likelihood of Success on the Merits

King County argues it is likely to succeed on the merits because the National Trails System Act Amendments of 1983 (Trails Act) and the Interstate Commerce Commission Termination Act (ICCTA) preempt the City's actions and the City has no authority to regulate the intersections. (Dkt. No. 7 at 11–16.) King County also argues the City's design is dangerous and contrary to engineering judgment, design standards, and Washington Law. (*Id.* at 16–20.) A showing of likelihood of success on the merits to a certain degree is not required; rather, this factor is considered along with the overall analysis of a balance of hardship. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 525 F.2d 86, 88 (9th Cir. 1975). Where the potential harm to a plaintiff is "sufficiently serious," it is "only necessary that there be a fair chance of success on the merits." *Id.*

Preemption is a corollary of the Supremacy Clause of the United States Constitution, and in general, provides that any municipal or state law that is inconsistent with federal law is without effect. Of the three preemption types, explicit, field, and conflict preemption, this case only concerns the latter. Conflict preemption applies where a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Young v. Coloma-Agaran*, 340 F.3d 1053, 1056 (9th Cir. 2003). It can exist "even when Congress has chosen to include an express preemption clause in a statute." *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1204 (9th Cir. 2002).

As this Court previously held in *Friends of the East Lake Sammamish Trail*, it is without question that federal regulation of railroads is both pervasive and comprehensive. 361 F. Supp. 2d at 1273 (citing *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981)). There are two relevant federal statutes in the context of railbanking: the Trails Act and the ICCTA. Under the Trails Act, the Corridor in which King County has an ownership interest

remains a federally-regulated railroad corridor designated for interim use as a recreational trail. *See* 16 U.S.C. § 1247(d). It is clear that railbanked corridors, like the one at issue here, remain part of the national rail transportation system subject to the jurisdiction of the Surface Transit Board (STB), pursuant to the ICCTA. *See* 49 U.S.C. § 10501(b); *Friends of the E. Lake Sammamish Trail*, 316 F. Supp. 2d at 1273–74. Therefore, like any active railroad line, state and local attempts to control a railbanked corridor are preempted by the ICCTA.[2] State and local governments have limited powers to regulate these corridors, including "the right to impose zoning and safety regulations on the trails so long as those regulations do not interfere with . . . the train manager's right and ability to maintain the right-of-way as a recreational trail." *Blendu v. F. of Weiser River Trail, Inc.*, 1999 WL 33944266, at *6 (D. Idaho June 10, 1999); *see Friends of E. Lake Sammamish Trail*, 316 F. Supp. 2d at 1274 ("Plaintiffs argue that these [city] regulations [on recreation trails] apply only to the extent that they do not frustrate development of the trail on the railbanked right of way. This Court agrees.").

However, the touchstone of this dispute is whether the City has the right to impose zoning and safety regulations at all. If the City does not have this authority, then preemption is not an issue because there would be no conflict between federal and municipal law. It is well established that a railroad easement grants the easement holder "exclusive control of all the land within the lines of its roadway." *Grand Trunk R. Co. v. Richardson*, 91 U.S. 454, 455 (1875); *see also Hanson Indus., Inc. v. Cty. of Spokane*, 58 P.3d 910, 914 (Wash. Ct. App. 2002) (A railroad right-of-way "is an easement with the substantiality of a fee and the attributes of a fee, perpetuity and exclusive use and possession."). The trail easements created by the Trails Act are just as exclusive as the coexisting railroad easements. *See Illig v. United States*, 58 Fed. Cl. 619, 631

---

[2] The City seems to fundamentally misunderstand this point. The City tries to argue that King County's powers to regulate the railbanked Corridor are not the same as a railroad's powers to regulate a railway. (Dkt. No. 19 at 2, 11.) The Trails Act makes it abundantly clear that railbanked corridors are regulated the same as a railway would be. *See* 16 U.S.C. § 1247(d). Moreover, the City itself concedes that King County holds the property interests of the previous railroad owner. (Dkt. No. 19 at 11.) The Court will not entertain this argument any further.

ORDER GRANTING KING COUNTY'S MOTION
FOR PRELIMINARY INJUNCTION
PAGE - 5

(2003) ("We therefore conclude that the Trails Act imposed a new easement across plaintiffs' properties which retained essentially the same characteristics as the original easement, both in its location and exclusivity."). Therefore, whoever holds the Corridor easements is granted the exclusive use, possession, and control of the Corridor, unless there is a superior property right.

Here, the Railroad's crossing easements reserve the right to use the property "for *any and all purposes whatsoever* . . . including but not limited to the right to construct, maintain, repair, renew, reconstruct, replace, and operate . . . facilities" of its choice. (Dkt. No. 9-1 at 22) (emphasis added); (*see* Dkt. No. 9-1 at 15.) There is no dispute that these rights now belong to King County. *See Hornish*, 182 F. Supp. 3d at 1130 (citing *Kaseburg v. Port of Seattle*, 2015 WL 6449305, at *7 (W.D. Wash. 2015) (Coughenour, J.)); (Dkt. No. 19 at 11) ("The City does not dispute that the County, pursuant to the national Trails System Act, 12 U.S.C. § 1247(d), holds the property interests of the former Burlington Northern Railroad on an interim basis."). Moreover, the City does not cite any authority that it has superior property rights to King County's easement. The City merely argues that the Sammamish Municipal Code requires all parties to obtain a right-of-way permit before starting construction on City streets. (Dkt. No. 19 at 14.) However, the intersections are part of an easement that is exclusively controlled by King County. (Dkt. No. 9-1 at 15, 22.) Therefore, King County has shown a substantial likelihood of success on the claim that the City does not have the authority to regulate the intersections at issue.[3]

Because the City likely does not have authority, the Court need not address King County's other arguments. The other arguments—federal preemption and the competing designs—are based on the premise that the City has limited authority to regulate activities at the

---

[3] The City argues that King County's complaint does not seek this kind of relief. (Dkt. No. 19 at 18.) However, the complaint was amended after the City's response, and a quiet title claim was added. (*See* Dkt. No. 18 at ¶¶ 64–68.)

intersections. At this time, King County has shown a likelihood of success on its claim that King County does not have authority to regulate the intersections.

//

### C. Likelihood of Irreparable Harm

To obtain a preliminary injunction, King County "must establish that irreparable harm is likely, not just possible." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit has found that loss of recreational opportunities is a form of irreparable harm. *Id.* at 1135. Here, King County argues it has the right to pursue redress for the injuries of its residents under the doctrine of third-party standing. (Dkt. No. 7 at 20 n.17.) The Court agrees. *See Washington v. Trump*, 1151, 1160 (9th Cir. 2017). If the stop work order is not lifted, the delay in construction will cause at least a month-long delay in use of the trail for many residents of King County. The Court concludes that this is a small irreparable injury, but injury nonetheless.

### D. Balance of Hardship and the Public Interest

Next, the Court assesses whether the balance of equities tips in King County's favor and if the injunction is in the public interest. *Winter*, 555 U.S. at 20. As is the case here, "[w]hen the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The balance of hardship tips sharply in favor of King County. The construction of four stop signs at two intersections imposes no hardship on the City. As King County points out, the only hardship the City could suffer is having to move the stop signs several feet. This is a trivial hardship in comparison to the delay in construction and ultimate opening of South Segment A that King County would suffer. The Court concludes King County has shown the balance of equities tips in its favor. Additionally, it is in the public interest to enter this preliminary injunction. The trail's completion will benefit the public, especially residents of King County and the City.

Therefore, King County's motion for a preliminary injunction is GRANTED because all of the requirements have been met.

//

//

## III. CONCLUSION

For the foregoing reasons, King County's motion for a preliminary injunction (Dkt. No. 7) is GRANTED. King County has demonstrated a likelihood of success on the merits of its argument that the City has no authority to regulate the ELST's intersections with 206th Avenue SE and SE 33rd Street because King County's property rights are superior to any limited crossing rights held by the City. Additionally, King County has demonstrated irreparable harm will be suffered, the balance of hardships weighs in King County's favor, and the preliminary injunction is in the public interest.

Effective immediately:

1. King County is authorized to resume construction of South Segment A, including pavement and construction of the intersections with 206th Avenue SE and SE 33rd Street; and

2. The City shall not take any additional actions to impede or delay King County's construction of the ELST, including attempts to require stop signs oriented towards trail users at the intersections with 206th Avenue SE and SE 33rd Street.

DATED this 8th day of August 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE